Cite as 2026 Ark. App. 176

# ARKANSAS COURT OF APPEALS

DIVISION I
No. CR-25-470

| | | |
|---|---|---|
| | | **Opinion Delivered** March 11, 2026 |
| DENO DICAMILLO | | |
| | APPELLANT | APPEAL FROM THE WASHINGTON COUNTY CIRCUIT COURT [NO. 72CR-23-2115] |
| V. | | |
| | | HONORABLE BETH STOREY BRYAN, |
| STATE OF ARKANSAS | | JUDGE |
| | APPELLEE | AFFIRMED |

**KENNETH S. HIXSON, Judge**

Appellant Deno Dicamillo appeals after he was convicted by a Washington County Circuit Court jury of two counts of rape and two counts of second-degree sexual assault. He was sentenced to serve an aggregate of 456 months' incarceration. On appeal, appellant argues that the circuit court abused its discretion in admitting evidence of his alleged suicide attempt to show consciousness of guilt because it was irrelevant and unfairly prejudicial by serving no other purpose than to confuse and mislead the jury.

I. *Relevant Facts*

In March 2016, appellant began sexually assaulting and raping his then fourteen-year-old stepdaughter, Minor Victim (MV), until approximately December 2018. MV waited until 2023 to report the assaults to MV's mother, Julie Luna, and law enforcement. Appellant was subsequently arrested on September 18, 2023, and charged by amended

felony information with two counts of rape, a Class Y felony, in violation of Arkansas Code Annotated section 5-14-103(a)(4)(A) (Repl. 2013); and second-degree sexual assault, a Class B felony, in violation of Arkansas Code Annotated section 5-14-125(a)(4)(A)(iv) (Repl. 2013).

While the case was pending trial and appellant was released on bond, appellant failed to appear in court for a scheduled in-court appearance on January 23, 2025. At the March 18, 2025, hearing, the circuit court ordered that the failure-to-appear charge be severed from his rape and second-degree sexual-assault charges without objection. However, the State mentioned at the hearing that there was a possibility it would seek to use appellant's failure to appear at the January 23, 2025, hearing as evidence of his consciousness of guilt at trial. The circuit court explained that the matter could be taken up in a pretrial motion.

On April 25, 2025, appellant filed a motion in limine to exclude evidence of failure to appear and improperly obtained medical records and brief in support. He specifically argued that his failure to appear was irrelevant and unduly prejudicial because it "was not willful, but rather due to serious medical issues, as documented." He explained that the evidence of his failure to appear would "[m]islead the jury by implying consciousness of guilt, when the reality was grounded in verifiable medical necessity." Appellant further argued that any medical records that were provided by defense counsel were inadmissible because those records had been provided by defense counsel as part of plea negotiations and not through a subpoena.

The State filed its response on April 27, 2025. The State explained that the medical records showed that appellant was admitted to the hospital on January 23, 2025, after he

was required to be in court. According to the State, the medical records showed that appellant told the physician he "took a lot of pills at one time," and appellant was put on suicide precautions. The State argued that it could use that evidence to show consciousness of guilt. It denied appellant's allegations that the medical records were part of plea negotiations and that the medical records were improperly obtained. Accordingly, the State maintained that the appellant's "suicide attempt and evasion of trial are probative and go to his consciousness of guilt" and asked that appellant's motion be denied. This motion was not addressed until the trial.

A jury trial was held on April 28–29, 2025. At the beginning of trial, the court took up the pending motions in limine. In relevant part, the following colloquy and ruling ensued:

[DEFENSE COUNSEL]: I think that then takes us to the motion with regard to the medical records. Medical records were provided by me to [the State] in an attempt to get an agreement with regard to quashing a failure to appear arrest warrant. To my knowledge, there's no – there's no custodian of records, there's no foundational witness for those records. I believe that they were clearly a attorney-to-attorney communication intended to satisfy the State and perhaps quash an FTA warrant due to the client being in the hospital. And I think the only potential witness that could authenticate those records would be me, and I certainly have no intention of testifying with regard to those, and I would ask the Court to exclude those.

. . . .

[THE STATE]: Regarding the medical records, these were turned over by the defense to the State regarding information about the

3

defendant's absence on -- when this was set for a trial, a status hearing. In those medical records it's noted that the defendant stated he took a lot of pills. He was put on suicide watch. I think they're relevant to show consciousness of guilt. This was essentially a flight from justice, a flight from a trial, to avoid consequences for his actions.

THE COURT: All right. Do you have an affidavit, or how do you --

[THE STATE]: I do --

THE COURT: How are you going to attempt to introduce those?

[THE STATE]: Judge, if the records aren't allowed, I would just ask that the doctor who made notes on them be allowed to testify of his treatment and the notes that he made of the defendant.

THE COURT: Wait. Start over. You've subpoenaed the doctor --

[THE STATE]: Yes, Judge.

THE COURT: -- that was there at the hospital?

[THE STATE]: Yes, Judge. We did not send a subpoena for the medical records, as they were provided from the defense. So, no, we don't have a subpoena for the medical records.

THE COURT: Okay. All right. Well, we couldn't introduce the medical records unless the defendant either agreed to it today or there was a custodian of the records.

[THE STATE]: Okay, Judge.

THE COURT: But certainly if you've subpoenaed the doctor that treated him --

[THE STATE]: Uh-huh.

THE COURT: -- he can testify as to why the defendant was there.

4

| | |
|---|---|
| [THE STATE]: | Okay.  Then that's fine.  Then I don't intend – |
| THE COURT: | Okay. |
| [THE STATE]: | – to introduce the medical records. |
| THE COURT: | Okay. |
| [THE STATE]: | The doctor is here to testify about what his knowledge– |
| THE COURT: | All right. Any questions about that, [Defense Counsel]? |
| [DEFENSE COUNSEL]: | I mean, I – |
| THE COURT: | It's relevant to the consciousness of guilt, so I'm going to allow the doctor to testify as to why he was there at the hospital.  But, certainly, the records wouldn't be admissible without a custodian. |
| [DEFENSE COUNSEL]: | Understood, Judge. I think – and [the State], I'm certain will correct me if I'm wrong.  I think the point that he wants to call the doctor for is an initial finding in the medical records that I think only occurs in one instance because he went to the ER, that, perhaps, it was an attempted overdose.  But I – I don't remember if this is the doctor that did the interaction, did the tests, read the quantitative or qualitative analysis, and I – |
| THE COURT: | All right. What's – who is the doctor that you've subpoenaed, and what's the anticipated testimony? |
| [THE STATE]: | Dr. Colmon Massey.  And it's noted that he puts a note that patient said, "I took a lot of pills at once."  He was put on suicide prevention.  He has knowledge of that, and that's essentially the testimony. |
| THE COURT: | All right.  Yeah, I'll allow that testimony.  All right.  So the motion is denied.  But for the records certainly would not be introduced without a custodian. |

5

Because appellant does not challenge the sufficiency of the evidence, only a brief recitation of the evidence admitted at trial is necessary for context. Corporal James Cavin testified that he interviewed MV after she reported an ongoing sexual relationship with her stepfather when she was between the ages of fourteen and sixteen. He explained that he did not take any DNA samples during his investigation because the assaults had occurred approximately six years before MV reported them. Corporal Cavin stated that he also spoke with MV's mother, Julie Luna, during his investigation. Ms. Luna produced recordings of conversations that she had with appellant over the telephone.

MV testified that appellant began performing sexual acts on her in March 2016 when she was only fourteen years old. She explained that the first incident occurred in the living room. Appellant had moved her arm to have her touch his penis both over and under his clothing. She testified that the incidents escalated after the first incident. He would insert his finger into her vagina, perform oral sex on her, and have her perform oral sex on him. Appellant would lead MV to the laundry room, away from the other rooms, and "would put [her] down on [her] knees in the laundry room and stick his penis inside of [her] mouth." Appellant eventually told MV she had to "learn how to swallow[,]" and he would ejaculate in her mouth. He would have MV go to Kum & Go with him and would perform different sexual acts on her while driving there, such as "touching [her] boobs or putting a finger inside of [her]." MV described another incident in the garage in which appellant pulled down her bottoms and inserted his fingers in her vagina before putting his penis in her vagina. MV

6

stated that the different sexual acts happened "at least a couple of times a week[,]" and MV would get a "break" from the assaults during the weeks that she had her period.

During the time span when the assaults were occurring, appellant would tell MV that her little brother would get taken away if she told anyone. The assaults continued until approximately December 2018, around the time MV started dating her now husband. Although she had previously told her husband about the assaults, MV did not tell her mother or law enforcement until July 2023.

After MV's testimony, the State asked to introduce a certified copy of the bench warrant that was issued by the court on January 23, 2025, for appellant's failure to appear. Defense counsel objected on the basis that the document was "hearsay within hearsay." The objection was overruled, and the document was admitted into evidence and presented to the jury.

Dr. Colmon Massey testified that he is a resident physician at Washington Regional Medical Center and that he worked the night shift when appellant was admitted between 6:00 p.m. and midnight on January 24, 2025. Appellant presented "nonresponsive-ish" at the time of his admission. Appellant was diagnosed as having an "[a]ltered mental status secondary to likely opioid intoxication . . . [and] acute respiratory failure." The hospital took suicide precautions with appellant because appellant told Dr. Massey the next morning that he had taken "a lot of pills at once" the night before. A urine drug screen showed opioids in appellant's bloodstream.

7

Julie Luna, MV's mother, testified that she married appellant in July 2016, and they divorced in April 2024. MV did not disclose that appellant had abused her until approximately August 2023 after Ms. Luna had separated from appellant in July 2023. Ms. Luna explained that once she knew what had happened, she confronted appellant on the telephone and recorded their conversations. She gave those recordings to law enforcement. Portions of those recordings were admitted into evidence and played for the jury. In the recordings, appellant made several incriminating statements, including "we messed around, but I never . . . never molested her . . . kind of, but not really. . . . [S]he would grab at it and stuff like that. And I touched her thing one time, like – like I did – it happened." When asked if they had "just" touched each other, appellant responded, "Uh, yeah, for the most part. Here's the deal. I wouldn't have been able to get it into [her] anyways[.]" When asked if there were other young girls or only MV, he responded, "Yeah, I promise. . . . When she was older, yes."

Karen Blackstone, a forensic interviewer at the Children's Safety Center, testified generally about delayed disclosures by child sexual-abuse victims. She explained that children often delay disclosing for a variety of reasons, including because they do not know the conduct is wrong, they may feel threatened or unsafe to tell, the child has a relationship with the offender, embarrassment, or their culture may influence disclosure. Ms. Blackstone admitted that she was not aware of any specific facts of this case and had never met MV.

After the State rested, defense counsel moved for directed verdict. Counsel argued that there was insufficient evidence because the State had failed to prove the specific year the

acts occurred. Counsel further argued that there was conflicting testimony and asked the court to direct a verdict on all counts. The circuit court denied his motion. Defense counsel then rested without presenting any evidence. The jury found appellant guilty of two counts of rape and two counts of second-degree sexual assault. The jury recommended that he be sentenced to serve an aggregate of 456 months' imprisonment, which the circuit court imposed. This appeal followed.

## II. *Suicide Attempt*

Appellant does not challenge the sufficiency of the evidence. Rather, his sole argument on appeal is that the circuit court abused its discretion in admitting evidence of his alleged suicide attempt to show consciousness of guilt because it was irrelevant and unfairly prejudicial by serving no other purpose than to confuse and mislead the jury. We disagree.

The admission or rejection of testimony is a matter within the circuit court's sound discretion and will not be reversed on appeal absent a manifest abuse of that discretion and a showing of prejudice to the defendant. *Gonzales v. State*, 2019 Ark. App. 600, 589 S.W.3d 505. An abuse of discretion is a high threshold that does not simply require error in the circuit court's decision but requires that the circuit court acted improvidently, thoughtlessly, or without due consideration. *Id.*

The State argues that appellant's arguments on appeal are not preserved, and we agree. An issue must first be raised to the circuit court to be preserved for appellate review. *Deloney v. State*, 2021 Ark. App. 36, 617 S.W.3d 717. A party cannot change the grounds

9

for an objection or motion on appeal but is bound by the scope and nature of the arguments made at trial. *Davis v. State*, 2018 Ark. App. 450, 558 S.W.3d 897. Further, it is well settled that an appellant must obtain a ruling on his or her argument to preserve it for appeal. *Oliver v. State*, 2020 Ark. App. 498, 612 S.W.3d 738.

Here, appellant filed several written motions in limine. His motion in limine to exclude evidence of his failure to appear and improperly obtained medical records is relevant to our discussion on appeal. In that motion, appellant made two arguments: (1) the State should not be allowed to introduce evidence of his alleged failure to appear at a pretrial status hearing as consciousness of guilt, and (2) the State should not be allowed to introduce any medical records obtained from appellant. We note that appellant did not argue in that or any other motion that the State should also not be allowed to introduce evidence of his attempted suicide to show consciousness of guilt. The circuit court postponed ruling on this motion in limine until the morning of the trial.

At the commencement of the trial, the court asked the attorneys to present their respective arguments, and a discussion ensued regarding the admissibility of medical records. The circuit court agreed that the medical records obtained from appellant were excluded because the State could not present the medical-records custodian. However, during that discussion, the State requested that it be allowed to have Dr. Massey testify regarding appellant's attempted suicide to show consciousness of guilt. The circuit court agreed that it was relevant to the consciousness of guilt, and appellant never objected or argued otherwise. Instead, the following discussion occurred:

10

| | |
|---|---|
| THE COURT: | It's relevant to the consciousness of guilt, so I'm going to allow the doctor to testify as to why he was there at the hospital. But, certainly, the records wouldn't be admissible without a custodian. |
| [DEFENSE COUNSEL]: | Understood, Judge. I think ~ and [the State], I'm certain will correct me if I'm wrong. I think the point that he wants to call the doctor for is an initial finding in the medical records that I think only occurs in one instance because he went to the ER, that, perhaps, it was an attempted overdose. But I ~ I don't remember if this is the doctor that did the interaction, did the tests, read the quantitative or qualitative analysis, and I – |
| THE COURT: | All right. What's ~ who is the doctor that you've subpoenaed, and what's the anticipated testimony? |
| [THE STATE]: | Dr. Colmon Massey. And it's noted that he puts a note that patient said, "I took a lot of pills at once." He was put on suicide prevention. He has knowledge of that, and that's essentially the testimony. |
| THE COURT: | All right. Yeah, I'll allow that testimony. All right. So the motion is denied. But for the records certainly would not be introduced without a custodian. |

Appellant never objected to the introduction of testimony concerning his attempted suicide to show consciousness of guilt on the basis it was irrelevant and unfairly prejudicial under Arkansas Rule of Evidence 403 as argued on appeal. Accordingly, because appellant failed to raise any of his specific arguments on appeal to the circuit court, they are not preserved, and we must affirm.

Affirmed.

KLAPPENBACH, C.J., and TUCKER, J., agree.

*John Wesley Hall* and *Samantha J. Carpenter*, for appellant.

11

*Tim Griffin*, Att'y Gen., by: *Rebecca Kane*, Ass't Att'y Gen., for appellee.